State National Bank of Springfield, Appellee, v. The United States Life Insurance Company, Appellant.

1. INSURANCE—*who not necessary parties to bill to enforce specific performance.* The insured is not a necessary party to a bill by a beneficiary to enforce the delivery of policies agreed by the insurer to be delivered.

2. INSURANCE—*when statements of general agent binding upon company.* The statements of a general agent of an insurer are binding upon it where no limitation of his authority is brought to the notice of the beneficiary who has acted upon the faith of such statements.

Bill in chancery. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1907. Affirmed. Opinion filed June 11, 1908.

WILLIAM A. ELLIOTT, CONKLING & IRWIN and ISHAM, LINCOLN & BEALE, for appellant.

PATTON & PATTON, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

The original bill filed by the State National Bank of Springfield, Illinois, appellee, against The United States Life Insurance Company, a New York corporation, appellant, prayed the specific performance of an alleged insurance contract to issue and deliver to appellee two certain endowment policies maturing De-

cember 22, 1905, upon the life of George M. Brinker-hoff. Subsequently, in March, 1906, appellee filed its supplemental bill, alleging that the said policies would have then matured, if they had been issued by appellant as demanded, and praying for a money decree against appellant for the value of said policies. After answers filed to said original and supplemental bills and the filing of replications to said answers, the cause was referred to the master in chancery to take and report the evidence. The cause was heard by the chancellor upon the evidence reported by the master, together with certain additional evidence heard in open court, and a decree was entered against appellant for the sum of $7,424.30.

The material facts out of which this controversy arises are substantially as follows: On December 22, 1890, appellant, in pursuance of applications to it therefor, issued to George M. Brinkerhoff, then fifty-one years of age, two policies of insurance numbered, respectively, 65870 and 65871 for $10,000 each, upon the ten-year continuable term plan, payable in the event of his death within ten years to his wife, Isabella G. Brinkerhoff. Among other conditions and agreements appearing on the policies, was the following:

"VI. This insurance is renewable, at the end of the specified period (under a new policy for same amount and of like tenor as this policy, or for same amount under any form of policy then issued by this company) at the option of the holder hereof, without medical examination, provided the holder hereof makes written application for such new policy, and, by a proper instrument in writing, surrenders this policy to the company, at its said office, while in force, and pays the premium upon such new policy according to the terms thereof. The legal holder or holders of this policy may, without medical examination, change this policy at any time during its continuance in force to any other plan issued by said company at such time by payment to the company of a sum equal to the difference in premiums

626     APPELLATE COURTS OF ILLINOIS.

State Nat. Bk. of Springfield v. U. S. Life Ins. Co., 142 App. 624.

with interest at the rate of four per cent. per annum compounded."

On October 19, 1891, Brinkerhoff joined by his wife, assigned these policies to appellee, and the written assignment was forwarded to and filed by appellant in New York. The first two annual premiums amounting to $601.40, were paid by Brinkerhoff, and the subsequent eight annual premiums were paid by appellee. Prior to and during the time the policies were in force, one J. H. Strong was the manager of appellant for Illinois, with headquarters in Chicago, and to him, as such manager, all premiums were paid, and with him appellee conducted the negotiations, correspondence and communications relative to the said policies and their surrender. On September 14, 1892, in reply to an inquiry by appellee relative to said policies, Strong, referring to the form of said policies, wrote to appellee, in part, as follows: "It is the best policy that is today written for insurance as a protection, and yet have the option to change to any form that is written, and always endowment at original age issued, viz., 51; and in addition thereto have credit for all money that may be paid to apply upon any policy that may be hereafter selected."

Subsequently, the president and cashier of appellee bank had several interviews with Strong, regarding the best disposition to be made of said policies at the termination of the ten-year period, viz: December 22, 1900, in which interviews Strong advised appellee to continue the insurance in the same form of policies for the further period of five years, and that after paying five annual premiums in addition to what had been paid on the original policies, at the expiration of what would then be fifteen years, appellee could change to fifteen-year participating endowment policies, bearing the date of the original policies, December 22, 1890, and at the premium rate for fifty-one years, which was then the age of Brinkerhoff, upon payment of the difference in premiums, with four per cent. interest per annum

compounded. In pursuance of said advice from Strong, appellee, together with George M. Brinkerhoff, made their applications to appellant for the issuance of the policies in controversy, as follows:

"To the United States Life Insurance Company in the City of New York:

The undersigned owners of Policy No. 65870, on the life of George M. Brinkerhoff, hereby request the United States Life Insurance Company in the City of New York to issue a policy in place and renewal thereof, of like amount and tenor, for another term of ten years, and herewith surrender the said policy to be cancelled on the issue of said new policy; and agree to pay the annual premium of $609.20 on the 22nd day of December in each year.

And in consideration thereof said undersigned do hereby constitute the original application for said policy No. 65870 together with this present application, the basis and part of the contract of insurance under the new policy hereby solicited.

Dated at Springfield, Ill., December 18, 1900.

STATE NATIONAL BANK,<br>
Springfield, Illinois, Assignee.<br>
J. F. Bunn, Cashier, and<br>
George M. Brinkerhoff."

The application relating to policy No. 65871 was identical in form with the foregoing.

In pursuance of said applications, appellant, on December 22, 1900, issued two policies of insurance, numbered respectively 100,294 and 100,295, for the sum of $10,000 each, upon the life of George M. Brinkerhoff, whereby it contracted to pay "to the State National Bank of Springfield, Ill. (payee), assignee, its successors or assigns" the face of the policies upon satisfactory proof of the death of Brinkerhoff within ten years from the date thereof.

Written in ink on the margin of the first page of said policies appears the following, except as to the numbers, respectively, of the original policies: "This policy is issued pursuant to the contract of insurance

made December 22, 1890, as expressed in Policy No. 65870, and in place of said policy, and for that reason does not require a tax stamp under any statute of the United States."

Under the printed designation "Benefits and Conditions Referred to Herein," in said policies, the sixth clause entitled "Option For Renewal Or Change," is as follows:

"VI. At any anniversary hereof, this policy then being in force, it may be renewed for another term or changed to any other participating plan issued by the company, without medical examination, upon payment of the premium corresponding to the advanced age of the insured; or to a participating policy bearing original date, and at the premium rate of the original age, upon payment of the difference in premiums, with four per cent. interest per annum, compounded."

And the annual premium rates per $1,000 of insurance on the various plans available to the holder of the policies under the sixth clause, are tabulated thereon according to different ages from twenty-five to sixty-five, inclusive, as follows:

"Rates Referred to in Benefits and Conditions.
Clause VI.

Annual premium rates per $1,000 of insurance in various plans:

| Life | 5 payment life | 10 payment life | 15 payment life | 20 payment life | Endowment in 10 yrs. | Endowment in 15 yrs. | Endowment in 20 yrs. | |
|---|---|---|---|---|---|---|---|---|
| 25 | $ 19.89 | $ 73.87 | $ 42.56 | $ 32.34 | $ 27.39 | $103.91 | $ 66.02 | $ 47.68 | 25 |
| 51 | 49.40 | 134.80 | 80.14 | 62.98 | 55.38 | 113.64 | 77.77 | 61.90 | 51 |
| 65 | 102.55 | 199.48 | 129.18 | 110.16 | 104.10 | 143.16 | 114.16 | 104.91 | 65" |

In this printed table the numerals 51 (referring to the age of the insured) and the numerals on the same line (referring to the annual premium rates at the age of fifty-one years for insurance on the various plans designated) are underscored with red ink.

The policies as above described were delivered to appellee by Strong, and appellee, thereafter, paid the annual premiums thereon amounting to $1,218.40 for each of the years ending December 22, 1900, 1901, 1902

and 1903, and, on December 22, 1904, being an anniversary period mentioned in the policies, appellee, having elected to exercise its supposed option to surrender said policies and obtain in lieu thereof two fifteen-year participating endowment policies for $10,000 each upon the life of George M. Brinkerhoff, as of the age of fifty-one years to mature December 22, 1905, to that end tendered to appellant at its office in New York City, the sum of $17,000 as the amount necessary to cover the difference in premiums between the two plans of insurance with four per cent. interest compounded, which tender was refused by appellant, and appellant then and since declined to issue said policies. Appellant's refusal of the tender and its declination to issue said policies was based solely upon the ground that by the terms of the contracts of insurance appellee was not entitled to make any such demand or have issued to it any such policies.

It being disclosed by the evidence that the original policies, bearing date December 22, 1890, were assigned by the Brinkerhoffs to appellee as collateral security for an indebtedness due to it from George M. Brinkerhoff, and that such indebtedness still continues to exist, it is urged on behalf of appellant that the Brinkerhoffs have a beneficial interest in said policies and are, therefore, necessary parties to this proceeding. If the original and supplemental bills filed in this case sought to enforce said original policies and determine the rights of the parties thereunder there would be some force in appellant's position, but it is conceded by appellant that the original policies were surrendered to it by appellee and Brinkerhoff and cancelled on December 22, 1900, when new policies in lieu thereof were issued to appellee as payee and assignee, and that, thereupon, all rights of the parties under said original policies ceased.

In the brief and argument filed on behalf of appellant it is said: "For the determination of the present rights of the parties we can now look only to those in-

struments which under the contract of 1890 are vital parts thereof today. These instruments are the application of 1890, the applications or requests of 1900, and the second term policies. The first term policies are absolutely dead, and in interpreting the contract in its present condition anything in the first term policies contained must not be considered, because the vital principles thereof have been transferred to and are now contained in the second term policies. The first term policies have at the request of appellee and the insured, been delivered up and cancelled. The second term policies by express terms have taken the place of the first, and the latter are now for the purpose of this case as though they never had existed."

It is admitted by appellant that appellee, as a creditor of Brinkerhoff, had an insurable interest in his life, and the policies of insurance here involved having been issued to appellee directly, as payee and assignee, the beneficial interest therein, if any, of the Brinkerhoffs does not concern appellant, but it is a question to be determined solely between the Brinkerhoffs and appellee. The contracts in question, evidenced by the policies issued December 22, 1900, are between appellant and appellee, and the Brinkerhoffs are not necessary parties to a proceeding instituted to determine the rights under said contracts of the respective parties.

What we have said upon the question of the absence of necessary parties, also answers the next contention of appellant, that the consent of the Brinkerhoffs was necessary to enable appellee to exercise its alleged right of election to have issued to it the form of policies demanded.

It is next urged on behalf of appellant that the chancellor erred in permitting appellee to introduce in evidence letters and statements by Strong, the general agent or manager of appellant, to the president and cashier of appellee, to the effect that after paying five annual premiums on the policies issued December 22,

1900, appellee could surrender the same and obtain in lieu thereof fifteen-year participating endowment policies as of the date of the original policies, to-wit: December 22, 1890, based upon the assured's age at that date, to-wit: fifty-one years; that upon the maturity of the fifteen-year policies on December 22, 1905, appellee could then demand payment in full upon said policies; and that like options had been exercised by and allowed to other persons having similar policies. The grounds of objection to this evidence are that it was an attempt by Strong, the agent of appellant, to vary the terms of the contracts in writing; that it was an attempt to vary, explain and add to the terms of the written contracts by parol evidence; and that it deprived appellant of a valuable property right, namely, the right to enter freely into contracts limiting the powers of its agents in a reasonable manner, in direct violation of the fourteenth amendment to the federal constitution.

The questions presented by these objections are of such wide scope that a full discussion is here impossible, and we must, therefore, content ourselves with only a brief statement of our views.

Strong was the general agent or manager of appellant for the State of Illinois, and was acting in that capacity when he wrote the letters and made the statements in question, relying upon the truth of which appellee shaped its course in surrendering the original policies and applying for the issuance of the policies here involved. The other general officers of appellant were in the city of New York and practically inaccessible to appellee.

No limitation upon the authority of Strong, as such agent, is shown to have been brought to the notice of appellee, except such as was contained in the general provisions embodied in the applications and policies, to the effect that no information or statement, unless contained in the application, made, given, received or required by any person at any time should be binding

on the company, and that no person other than the president, together with the secretary or actuary, should have power to alter or waive any contract or condition in behalf of the company.

A stipulation or condition purporting to deprive all of the officers and agents of a corporation of authority to act cannot be effective, because it would result in the termination or suspension of the exercise of functions given to the corporation by law, and which it has no power to abdicate. Johnson v. Aetna Ins. Co., 107 Am. St. Rep. 92, note on page 102, and cases cited.

The sixth clause, heretofore quoted, of the conditions and agreements referred to in the original policies of insurance issued December 22, 1890, whereby appellee was given the option to surrender said policies at the end of ten years and apply for new policies in lieu thereof, is conceded by appellant to have entitled appellee to demand and receive the form of policies which it subsequently demanded, and the statements and letters of Strong insofar as the same related to said policies, were, therefore, in accord and not at variance therewith. Insofar as such statements and letters applied to the policies in question, issued December 22, 1900, they were properly admitted in evidence, not for the purpose of varying or contradicting the terms of the said insurance contracts, but, when taken in connection with the form and provisions of the contracts actually issued to appellee and the fact that similar settlements had been made with persons holding like policies, as tending to show the practical construction which appellant, through its general agent and by its acts, had placed upon the same or similar contracts. Such evidence was competent for the purpose of enabling the court to ascertain the intention of the parties and to construe the contracts in accordance with such intention. Whalen v. Stephens, 193 Ill. 121.

Furthermore, an examination of the provisions in the policies and the form in which said policies were delivered to appellee, excluding from consideration the

evidence complained of, warrants, in our opinion, the construction put upon them by appellee, and by the chancellor in the decree which was entered.

The applications for the policies in question constitute the original applications for the policies issued December 22, 1890, the basis of and part of the contract of insurance under the new policies to be issued. The policies, upon the first page, provide that they are "subject to the benefits and conditions" and "notice" on the succeeding pages; they bear a written indorsement on the margin of the first page, stating: "This policy is issued pursuant to the contract of insurance made December 22, 1890, as expressed in Policy No." (here is given the number of the original policy) and in place of said policy; a printed clause relating to "options for renewal or change" under the general designation, "benefits and conditions referred to herein," provides that at any anniversary thereof the policy may be changed to a *participating* policy bearing *original date* and at the *original age,* upon payment of the difference in premiums with four per cent. interest compounded; and on the fourth page, under the designation "Rates referred to in benefits and conditions," appears the table of ages and rates, heretofore mentioned, with the figures fifty-one and the figures following on the same lines, as heretofore described, underscored with red ink.

The evidence in the record justifies the conclusion that the policies were in their present form when delivered to appellee, and that the underscoring with red ink, as described, was done at the home office of appellant in New York City, by some one in its employ.

Considering the references in the policies in question to the original application and contracts of insurance, the original date and original age, and the table of ages and rates, conspicuously marked to correspond with the age of Brinkerhoff when the original policies were issued, we think the contracts should be construed as contended for by appellee.

Counsel for appellant refer to the amount found by the decree to be due to appellee, as a subordinate issue in the case. According to appellee's computation as made by the witness Bunn, the amount due from appellant at the date of the decree was $10,394.69. Hubbell, the actuary employed by appellant, testified that the amount due appellant December 22, 1905, for the difference in premiums compounded at four per cent. was $16,377.49, and that the value at that time of a fifteen-year participating endowment policy for $20,000 issued in 1890, would be $23,400. This, upon the theory that appellee was entitled to a settlement as alleged in its supplemental bill, would make the amount due appellee on December 22, 1905, $7,022.51, which, computing interest from March, 1906, when the supplemental bill was filed, to the date of the decree upon the amount due according to Hubbell's estimate is approximately correct.

The decree of the Circuit Court will be affirmed.

*Affirmed.*